Adelina **CICIRELLO**

v.

**NEW YORK TELEPHONE CO.**

**Civ. No. 86–3366.**

United States District Court,
E.D. Pennsylvania.

Jan. 4, 1989.

---

**524**

Peter A. Buxbaum, Philadelphia, Pa., for Adelina Cicirello.

Lon S. Bannett, New York City, Mark S. Dichter, Philadelphia, Pa., for New York Telephone Co.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff brings the present action for reinstatement and back pay to redress an alleged violation of a 1974 consent decree (the "Decree") that resolved a class sex discrimination in a case entitled in *Brennan v. American Telephone and Telegraph Co.*, Civ. No. 74–1342 (E.D.Pa. May 30, 1974). Plaintiffs in *Brennan* were Secretary of Labor Peter Brennan, the Equal Employment Opportunity Commission, and the United States of America; defendants included numerous constituents of AT & T, including New York Company, the named defendant in the present action.[1] The Decree included directives for evaluation of jobs and assignment of minimum salary levels and back pay awards to specific employees.

Defendant has moved to dismiss plaintiff's action for, *inter alia*, lack of standing, lack of jurisdiction,[2] laches, as failing to state a claim under the Decree, and preclusion by the final judgment entered in the action of *Cicirello v. New York Telephone Co.*, Civ. No. 83 Civ. 3114 (S.D.N.Y. Oct 10, 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). After oral argument, I allowed discovery on the question of laches and delayed disposition of the motion pending receipt of further briefing on both the claim of laches and on the threshold question of plaintiff's standing. Defendant's motion to dismiss plaintiff's amended complaint[3] is now ripe for disposition.

Plaintiff claims that she has standing to bring this action to enforce its provisions because she was employed by the defendant during the period in which the Decree was in effect. Specifically, plaintiff pleads that she was "one of the individuals who was covered by the Decree as having been discriminated against in job assignment, salary level, and promotion opportunities on the basis of her sex." Amended Complaint, ¶ 11. Plaintiff argues that she would have been in the group of management employees expressly referred to in the Decree as entitled to back pay had not defendant, in an allegedly intentional effort to deprive her of the benefits of the Decree, demoted her to an ineligible position prior to the execution of the Decree. She thus claims to be in the narrow category of persons who were, by explicit terms of the

---

1. The action in 74–1342 was brought pursuant to sections 706(f)(1) and 707(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and sections 6(d), 15(a)(2), and 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*

2. Defendant further claims that the jurisdiction of this court to enforce the Decree has expired. Section III.A. of the Decree provides in pertinent part:

   The Court retains jurisdiction of this action for entry of such orders as are necessary to effectuate the provisions of this Decree. The term of this Decree shall be five years from this date, but as to the specific issues dealt with herein, the Defendants are permanently enjoined from violating the provisions of the Equal Pay Act, Title VII, and the Executive Order. Upon certification to this Court that the payment of back wages ordered in Part A, Section II, has been made, that portion of this Decree will be dissolved as having been satisfied.

   By these terms, the five-year period would have expired on May 30, 1979.

   As noted in the September 2, 1987 oral argument on defendant's previous motion to dismiss, this court currently retains subject matter jurisdiction over plaintiff's claims despite expiration of the Decree insofar as plaintiff has pled that defendant's fraudulent conduct prevented timely exercise of her rights.

3. Upon leave of this court, plaintiff filed an amended complaint on September 17, 1987.

Decree, to have benefited directly from the back pay provision.

Initially, this court is confronted with the question of plaintiff's standing, as a non-signatory to the Decree, to bring this action to enforce the Decree.[4] For, assuming *arguendo* that plaintiff does belong to the narrow category of persons intended to benefit directly from the Decree, it is far from settled whether, in a case of this kind, a non-party beneficiary of a consent decree has standing to enforce the decree.

In a securities case, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court observed that "a well-settled line of authority ... establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Id.* at 750, 95 S.Ct. at 1932 (citing, among other cases, *United States v. Armour & Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971) (antitrust action)). The rationale for this observation had been expressed below in Judge Hufstedler's dissent: Judge Hufstedler pointed out that the potential exposure to litigation by allowing standing to nonparties would seriously impair settlement of litigation, an end that she found outweighed the interest of nonparty litigants in obtaining direct vindication of private interests. *Manor Drug Stores v. Blue Chip Stamps*, 492 F.2d 136, 144 n. 3 (9th Cir.1974) (Hufstedler, J., dissenting).

However, the courts of appeals are in disagreement as to whether the *Blue Chip* rule should apply to nonparty beneficiaries of consent decrees affecting civil rights. The Second Circuit has suggested that nonparty prisoners who would benefit from a stipulation settling an action of other prisoners might have standing to enforce the stipulation. *Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir.1977).[5] Two district courts in the Second Circuit have allowed third party standing to enforce employment discrimination consent decrees. *See Virgo v. Local Union*, 107 F.R.D. 84, 91 (S.D.N.Y.1985) (distinguishing civil rights cases from securities and antitrust cases for the purposes of third-party standing); *Byrd v. Long Island Lighting Co.*, 565 F.Supp. 1455 (E.D.N.Y.1983). The Seventh Circuit has also found that union members have a cause of action as the third party beneficiaries of a consent decree entered by their union, *Jones v. Local 520*, 603 F.2d 664 (7th Cir.1979),[6] and the Federal Circuit has extended third party standing to water purchasers to enforce a consent decree governing water allocation between the United States and the Bureau of Reclamation, *H.F. Allen Orchards v. United States*, 749 F.2d 1571 (Fed.Cir.1984).

In contrast, district courts in the Third, Sixth, and Ninth Circuits have denied standing to plaintiffs seeking to enforce consent decrees entered in cases brought by the EEOC. *See Wilson v. Bell Telephone Co.*, Civ. No. 75–441 (E.D.Pa. Jan. 10, 1978); *Mullins v. South Central Bell Telephone Co.*, Civ. No. 1–77–127 (E.D. Tenn. Feb. 20, 1979); *Equal Employment Opportunity Comm'n v. Local Union No. 3*, 416 F.Supp. 728, 732 (N.D.Ca.1975) (Peckham, C.J.) (denying standing to nonparty beneficiaries to the decree, but allowing their participation in proceedings as a friend of the court).

The consent decree that formed the basis of the race and sex discrimination claims in both *Wilson* and *Mullins* was formed in *Equal Employment Opportunity Comm'n v. American Telephone & Telegraph*, Civ. 73–149 (E.D.Pa. Jan. 18,

---

4. I note that jurisdiction of plaintiff's complaint is based solely on the Decree. Plaintiff brings no individual claim of discrimination in this action; such claims appear to have been exhausted or resolved in other actions.

5. *See also Owens v. Haas*, 601 F.2d 1242 (2d Cir.1979) (finding prisoners had a cause of action as third party beneficiaries of a *contract* affecting prison conditions).

6. Using a different remedy, the Seventh Circuit has also allowed nonparty beneficiaries to intervene in an action before the expiration of the court's jurisdiction over a consent decree. As the five-year period in the present case expired in 1979, that course of action is unavailable in this case.

1973), a case involving the same parties and issues, but addressing non-management employees. Significantly, this decree uses exactly the same enforcement language as the Decree in the present case uses. In denying the claim made pursuant to the consent decree in *Wilson*, Judge VanArtsdalen drew directly from the Supreme Court's reasoning in *Blue Chip Stamps:* "[A] consent decree is more akin to a judgment order than a private contract and only parties to a judgment have standing to seek or challenge its enforcement." *Wilson*, slip op. at 4. The court thus concluded that "though it is clear Bell employees such as plaintiffs were intended beneficiaries of the *AT & T* consent decree, plaintiffs were not parties to that decree and as such have no standing to seek its enforcement." *Id.*

To the extent that *Wilson* purports to find in *Blue Chip Stamps* a rule governing all civil rights consent decrees, I respectfully disagree. I think it is quite possible that some consent decrees, carefully parsed, would reflect an understanding that nonparty beneficiaries could bring enforcement actions. However, the construction of the Decree at issue in the present case does not, in my view, contemplate enforcement by non-parties. Compliance with the Decree is addressed in Section II, which opens in subsection A by reciting that "[t]he government plaintiffs shall endeavor to coordinate their efforts to assure compliance with the Decree" and concludes in subsection C that "[t]he government will promptly notify the Bell Company involved and A.T. & T. of any problems of noncompliance with this Decree which they believe warrant investigation. Such company will be given 60 days to investigate the complaint and conciliate with the government regarding the taking of any appropriate corrective action. At the end of this period, the government, if not satisfied, may seek an appropriate resolution of the question by the Court."

Moreover, to the extent that the Decree envisaged pursuit by individual employees of their own remedies, it seems apparent that such cases were not seen as arising under the Agreement. Thus Section I.B. provides: "Acceptance by any person of individual relief ordered in Part A [promotion and back pay remedies sought by plaintiff Cicirello] shall constitute a waiver and release by such person of any claims for alleged violations of Title VII of the Civil Rights Act of 1964, ... Executive Order 11246, ... or any applicable state fair employment practice laws or regulations based upon occurrences prior to the date of this Decree as respects [sic] those issues dealt with in the Decree." The Decree evidently contemplated *separate* litigation of private causes of action by plaintiffs who did not, whether because of ineligibility, error by the parties in enforcement, actual fraudulent exclusion, or other reason, directly benefit from its provisions.

Other courts have had occasion to construe similar enforcement clauses allowing the "plaintiff United States" to apply for court enforcement of noncompliance. In *Rule v. International Ass'n of Bridge, Structural and Ornamental Ironworkers*, the court read this phrase as "plain language of the consent decree vest[ing] the right to bring an action for noncompliance *exclusively* in the United States. 423 F.Supp. 373, 381 (E.D.Mo.1976) (emphasis added), *aff'd*, 568 F.2d 558, 565 n. 10 (8th Cir.1977) ("we perceive no error in the district court's holding that plaintiff lacks standing."). In *Hameed v. International Ass'n of Bridge, Structural and Ornamental Ironworkers*, 637 F.2d 506, 518 n. 10 (8th Cir.1980), the Tenth Circuit came to the same conclusion.

I find that the closely analogous language of the Decree entered in this case yields the same result: plaintiff is without standing to bring this enforcement action.

An appropriate order follows.

## ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED and DIRECTED that defendant's motion to dismiss the plaintiff's action is GRANTED. This action is dismissed in its entirety.